Bradbury, J.
The plaintiff in error on behalf-of himself and others began an action in the court of common pleas of Geauga county, against the Board of Education of Special School District No. 1 of Huntsburg township of that county, to prevent the board of education from erecting a schoolhouse on a site thereon, which he contends had not been lawfully selected. The petition set forth the following facts bearing upon the manner in which the special school district was established and the schoolhouse site selected: That about
June 14, 1895, such proceedings were had that the probate court of said county appointed three commissioners under section 3938, Revised Statutes, to consider and determine whether a special school district should be created in said township of Huntsburg according to the prayer of a petition then pending before said judge; that said commissioners duly qualified and entered upon their duties, and found in favor of creating a special school district, and also selected a site whereon to erect a schoolhouse, and made a written report to the probate judge of the county establishing the special school district in question and designating a site thereon describing the same, upon which a schoolhouse should be erected, which report was confirmed by the probate judge; that thereafter said board of education was duly elected, organized-and entered upon its duties ; that on July 20, 1895, the board caused an election tobe held to determine whether six thousand dollars should be raised by taxation on the property within the district to purchase a site and build a schoolhouse thereon, which proposition the board afterwards declared to have been carried, authorizing a tax not exceeding six hundred dollars per *356 year for the purposes of buying such site and erecting said schoolhouse; that after said proposition had been declared carried, the board of education .purchased a schoolhouse site other than the one designated by the commissioners appointed by the probate court, and began the erection of a schoolhouse thereon. Afterwards by a supplemental petition the plaintiff brought in the following parties : R. N. Ford, and George H. Ford, partners as Boughton, Ford & Co., Boughton, Ford & Co., Charles J. Scott, Harley Barnes, and the Realty Title and Investment Co., a corporation, alleging them to' have been connected with the sale of the bonds and the custody of their proceeds that the special school district issued to provide funds for purchasing the schoolhouse site and erecting the schoolhouse, also J. F. Rose and Theodore Curtiss who had contracted to erect the building. The prayer of the petition and supplemental petition is to the effect that the board of education be enjoined from purchasing any other site than the one designated by the commissioners appointed by the probate court, from erecting a schoolhouse on any other site, from levying a tax selling bonds or paying out the funds of the special district therefor; that the contract for erecting the schoolhouse be rescinded and for general relief.
The board of education by its answer admits “that it is causing to be erected a schoolhouse upon a site other and different from that designated by said commission,” but that in doing so it was acting in good faith believing the substituted site would better accommodate the pupils of the district, and that the new site was selected at the request of a majority of the citizens, taxpayers and electors of the district.
*357 The action was tried in the court of common pleas and judgment rendered for the defendants ; the plaintiff appealed the cause to the circuit court where also the defendants prevailed. The circuit court found as a matter of fact: “1st, that the commission sent out by the probate court to establish said special school district, located a site for said schoolhouse within said district. 2nd, that the defendant board did not build a schoolhouse upon said site nor procure nor take any steps to procure the title thereto. 3d, that the defendant board did purchase a site for a schoolhouse different from that selected by said commission and began the erection of a school building thereon before the commencement of this suit, and completed the same about the 1st day of December, 1895. And thereupon the court find the issues joined between the parties in favor of the defendant, and that the plaintiff is not entitled to the relief prayed for in the petition and amended petition, and it is ordered that said petition and, amended petition and that the defendant recover their costs of the plaintiff.”
The first question that arises concerns the power of the board of education to abandon the site selected by the commissioners appointed by the probate court and then proceed to select a new site, purchase the same and erect a schoolhouse thereon. An examination of the statutes discloses no such authority.
Counsel for defendant sug’gestthat the provision for- filing a petition with the probate judge applies only where it is sought to unite in a special school district territory lying indifferent townships or counties. And as the territory that comprises the school district involved here, all lay in one town *358 ship those provisions did not apply. If that were so, it would not help the cause of the defendants. If, because the territory all lay in one township, the probate judge had no jurisdiction of the matter, the entire procedure was void, and there would be neither a school district, nor a board of education, created thereby, and therefore the action of the board of education would be a mere nullity imposing no obligation on any inhabitant or taxpayer within the territory, and the plaintiff’s right to relief against their imposition of a tax on his property would be clear. Section 3934, Revised Statutes, which, in certain cases, authorizes a petition to be filed with the probate judge for creating a special school district doubtless is primarily applicable where it is proposed to erect into a special district territory that is situated in different townships. Section 3948, Revised Statues, however, authorizes a petition to be filed with the probate judge in certain cases, where the object is to create a special district composed of territory all of which lies within the same township ; and when the petition is filed with the probate judge, “ thereafter such proceedings may be had therein, and they shall have the same effect as is herein provided for the formation of joint subdistricts.” Therefore, when the circumstances authorized the filing with the probate judge of a petition to create a subdistrict, these words of the statute expressly declare that whether the district to be created is a joint subdistrict, that is composed of territory situate in different townships or simply a special subdistrict composed of territory, all of which is located in the same township, the proceedings and the effect thereof shall be the same. The proceedings that the statute *359 thus refers to are found in sections 3934 to 3945, inclusive, Revised Statutes.
Upon the filing of the petition praying for the creation of a special subdistrict, section 3938 makes it the duty of the probate judge to appoint £ £ three judicious, disinterested men of the county, ” etc., to act in the premises. Section 3939 requires them to take an oath binding them to a faithful dischargeof theirduties, and to meet at a timeand place to be named in a notice published for that purpose, and authorizes them to examine witnesses under oath. Section 3941 requires them to report in writing to the probate judge, 1st, “whether or not a joint subdistrict ought to be appointed and their reasons therefor. 2d. If they find in favor of the establishment of a joint sub-district, they shall give the lines and a plat thereof; they may also change the lines of the subdistrict proposed in the position (petition) by including therein other territory, or excluding territory included therein or both; and if there is no suitable schoolhouse within such boundaries, or, if there is one, but it is not suitably located, they shall designate a site whereon to erect such building, provided, that, if said commissioners shall have located, or shall hereafter locate a site upon a township or county line and embracing territory in different townships, then the school building shall be erected on said site but in that township having the largest number of children of school age who live in said joint subdistrict. ’ ’
Section 3941c», Revised Statutes makes it the duty of the proper board of education to purchase the site thus designated by the commissioners.
The statute thus provides for a disinterested and impartial commission, and enjoins upon it, *360 among- other duties, that of designating a site upon which to erect a schoolhouse in case they find in favor of the creation of the special subdistriet. This is a matter of very little less importance to the inhabitants of the territory than the determination of the question of the creation of the district itself. This method of selecting a site for a schoolhouse by submitting its determination to a disinterested commission is likely to secure one that will best accommodate the school children within the special subdistrict, and we think was designed by the general assembly to conclusively determine the location of the schoolhouse therein.
The effect of the proviso in section 3941 that, where the site selected by the commission shall be upon a township or county line and embraces territory in different townships, the school building shall be erected on said site but in that township having the largest number of children of school age who live in said joint subdistrict, is simply intended to require the schoolhouse, in the case therein provided for, to be built in the township there designated, and should not be construed to limit the power of the commissions to select schoolhouse sites to that particular territorial condition. The selection of a schoolhouse site is just as important and difficult, whether or not it is located on a county or township line ; the power of the commission to act upon the matter is not limited to instances where the site selected is on such line, but is general. And whether the site selected by them is located on a township or county line or not, the duty of selecting one is enjoined upon them by the statute, they act under oath, and report their determination in writing to the pro *361 bate judge of the proper county. The character or nature of this duty is such that it should be presumed that the legislature intended to make the determination of the commission in this respect final and conclusive. Thereafter in determining any question that may be submitted to them respecting the amount to be expended in erecting a schoolhouse, the inhabitants may rely upon the determination of the commissions as to the' site on which it shall be placed. The board of education, therefore, had no power to purchase another site or to erect a schoolhouse thereon.
2. The circuit court on the trial of the cause found that a schoolhouse site had been selected by the commission, but that the board of education had, before the commencement of this action, purchased another site and had begun the erection of a schoolhouse thereon, which was completed before the cause was tried in the circuit court.
It thus appears that without authority of law, regardless of the action pending to restrain them and in violation of the rights of the plaintiff and those he represents, the board of education proceeded to construct and finish the schoolhouse on the site selected by them. The rights of the plaintiff, and those he represents, in the premises should not be unnecessarily affected by this unlawful course of procedure pursued by the board of education and those acting with them.
We pass by any consideration of the rights that bona fide purchasers of the bonds may have, and proceed to a brief consideration of the relative rights of the parties to the action as they are set forth in the pleadings.
If the averments of the amended and supplemental petition are true it is manifest that not *362 only did the purchasers of the schoolhouse bonds have notice of the pendency of this action, but that the greater part of the proceeds arising1 from the sale of the bonds was in the hands of Boughton, Ford & Co., at the time they were made parties to the action. It is also clear, that in so far as the rights of the parties to the action are concerned, the board of education can be enjoined’ from levying or collecting- taxes for these bonds, leaving the holders of the bond if they have passed] into the hands of tona fide holders for value without notice to assert in a separate action such right as the rules of law accord in such cases.
The plaintiff is entitled to whatever relief a court of equity, with its comprehensive powers in that respect, can afford him, and to which the facts to be ascertained upon a trial of the action may entitle him.

Judgment reversed.